UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SERENA THOMPSON, et al.,                              :
                                  Plaintiffs,    :
                                                 :
                 -against-                          :          18 Civ. 7139 (LGS)
                                                 :
CORIZON HEALTH, INC., et al.,                        :          OPINION & ORDER
                               Defendants.  :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Defendant Corizon Health, Inc. moves for summary judgment on Plaintiffs Serena

Thompson, Linda Unneland, Sanja Medich and Naomi Dechoudens' claims of a hostile work

environment and retaliation under the New York City Human Rights Law ("NYCHRL") and

their claims of violations of the New York Labor Law ("NYLL").[1]  For the reasons stated below,

the motion is denied.

## I.    BACKGROUND

Defendant is a prison healthcare contractor that, as relevant to this case, provided

healthcare services to inmates at the Rikers Island jail complex pursuant to a contract with the

New York City Department of Health and Mental Hygiene ("DOHMH").  Plaintiffs are licensed

mental health workers formerly employed by Defendant as Mental Health Clinicians at Rikers

Island.  Plaintiffs claim they were subject to repeated sexual harassment by inmates and

supervisors, and that Defendant failed to take reasonable and appropriate steps to prevent

harassment while ignoring and discouraging Plaintiffs' complaints and proposed remedial

---

[1] Plaintiffs stipulated to dismiss with prejudice their claims brought under Title VII of the Civil
Rights Act of 1964, as amended, and the Court continues to exercise its supplemental jurisdiction
over the state law claims pursuant to 28 U.S.C. § 1367(a).  Claims against the City of New York,
Physician Affiliate Group of New York and Health and Hospitals Corporation have been settled.
Plaintiff Annie Petraro also settled all of her claims.

measures, thus creating a hostile work environment under the NYCHRL.  Plaintiffs Thompson

and Medich ("Retaliation Plaintiffs") also claim they were retaliated against for complaining

about the sexual harassment they faced.  Plaintiffs Thompson and Unneland claim they were not

paid for work performed on their unpaid lunch breaks and were not paid overtime, resulting in a

violation of the NYLL.

## II.    STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v.*

*Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)).  In evaluating a motion for summary judgment, a court must

"constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all

reasonable inferences and resolv[e] all ambiguities in its favor."  *Wagner v. Chiari & Ilecki,*

*LLP*, 973 F.3d 154, 164 (2d Cir. 2020) (internal quotation marks omitted).  When the movant

properly supports its motion with evidentiary materials, the opposing party must establish a

genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P.

56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of

the facts to overcome a motion for summary judgment."  *Fed. Trade Comm'n v. Moses*, 913 F.3d

297, 305 (2d Cir. 2019) (quotation marks omitted).  "Only admissible evidence need be

considered by the trial court in ruling on a motion for summary judgment."  *Porter v.*

*Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013); *accord Starr Indem. & Liab. Co. v. Brightstar*

*Corp.*, 388 F. Supp. 3d 304, 323 (S.D.N.Y. 2019), aff'd, 828 F. App'x 84 (2d Cir. 2020).[2]

## III. DISCUSSION

### A. NYCHRL Hostile Work Environment Claims

#### 1. Statute of Limitations

The parties dispute whether Plaintiff Dechoudens' hostile work environment claim is barred by the NYCHRL's statute of limitations. The NYCHRL requires claims to be filed within three years of the date of the alleged discriminatory or retaliatory act. N.Y.C. Admin. Code § 8-109(e). The Complaint in this case was filed on August 8, 2018, and so bars recovery for discriminatory acts occurring before August 8, 2015. Dechoudens worked for Defendant from June 18, 2012, until September 28, 2015. Dechoudens provides evidence -- in the form of emails from Dechoudens to facility staff -- discussing specific instances of harassment she experienced in February and March of 2014. Dechoudens provides additional evidence, in the form of a declaration, of specific instances of harassing conduct of a sexual nature that took place before August 8, 2015, as well as ongoing harassment during the term of her employment with Defendant. Dechoudens does not identify specific instances of harassment after August 8, 2015.

Under the continuing violation doctrine, a plaintiff may recover for activity that took place outside of the limitations period if she can show "a single continuing pattern of unlawful conduct" that began outside the limitations period and extended into that period. *St. Jean Jeudy v. City of New York*, 37 N.Y.S.3d 498, 500 (1st Dep't 2016); *accord Mejia v. T.N. 888 Eighth Ave. LLC Co.*, 95 N.Y.S.3d 168, 170 (1st Dep't 2019); *see also Ctr. for Indep. of Disabled v.*

---

[2] Plaintiffs argue that summary judgment is improper because Defendant's Rule 56.1 statement is allegedly lengthy, argumentative and does not cite the record evidence with enough specificity. Defendant's Rule 56.1 statement identifies specific record evidence supporting its factual claims, and denial of summary judgment for noncompliance with Rule 56.1 is not warranted.

*Metro. Transportation Auth.*, 125 N.Y.S.3d 697, 703 (1st Dep't 2020) ("the reach of the

continu[ing] violation doctrine under NYCHRL is broader than under either federal or state

law").  Dechoudens provided evidence of repeated instances of sexual harassment by inmates

throughout her time working for Defendant, including detailed, specific instances of unwanted

sexual conduct.  Based on this evidence, a reasonable jury could conclude that such conduct

occurred and extended into the limitations period.  *See Mejia*, 95 N.Y.S.3d at 170 (treating

presence of continuing violation as a triable fact issue).  On this basis, Defendant is denied

summary judgment on the ground that Dechoudens' hostile work environment claim is time

barred.

### 2.  Presence of a Hostile Work Environment Under the NYCHRL

The NYCHRL has "uniquely broad and remedial purposes, which go beyond those of

counterpart State or federal civil rights laws."  *Williams v. New York City Hous. Auth.*, 872

N.Y.S.2d 27, 31 (1st Dep't 2009) (internal quotation marks omitted).  A "hostile work

environment" for purposes of the NYCHRL is one where there is "differential treatment" on the

basis of a status enumerated in the statute, such as gender.  *Id.* at 38.  In other words, all that is

required to sustain Plaintiffs' NYCHRL hostile work environment claims is "unequal treatment"

based on their gender.  *Id.* at 39.  Unlike its state and federal counterparts, the NYCHRL

addresses the severity or pervasiveness of the complained-of conduct on the question of damages

only, not liability.  *See id.* at 38.

A court considering NYCHRL claims must consider "the totality of the circumstances"

and "overall context in which the challenged conduct occurs."  *See Ladepo v. United Cerebral*

*Palsy of New York City, Inc.*, No. 15 Civ. 7026, 2018 WL 4356726, at \*11 (S.D.N.Y. Sept. 12,

2018) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir.

2013); *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 59 (1st Dep't 2012)).  The Second Circuit has

cautioned district courts that the existence of a hostile work environment "presents mixed

questions of law and fact that are especially well-suited for jury determination."  *Schiano v.*

*Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006); *accord Schaper v. Bronx Lebanon*

*Hosp. Ctr.*, 408 F. Supp. 3d 379, 397 (S.D.N.Y. 2019).

### i.  Differential Treatment

The parties do not dispute that Plaintiffs routinely suffered a variety of plainly

unwelcome gender-based conduct by inmates:  threats of rape and other sexual violence, graphic

sexual comments, inmates' intentional exposure of their genitalia, acts of sexual exhibitionism

such as masturbation, and spraying of semen, urine, feces and other bodily fluids.  Although

"[P]laintiffs' chosen occupation necessarily places them in the company of prison inmates, men

not distinguished for commendable deportment or courtly display of social graces, and . . . as a

result, exposure to an occasional embarrassing remark or situation is to be expected," *Dawson v.*

*Cty. of Westchester*, 373 F.3d 265, 273 (2d Cir. 2004), a reasonable juror could conclude that the

complained-of conduct far exceeds tolerable workplace conditions, instead presenting severe

health and safety issues for Plaintiffs.  On this basis, Defendant is denied summary judgment on

its hostile work environment claim.

Defendant claims that the majority of the complained-of misconduct is not based on

gender, but instead relates only to the gender-neutral issue of violence in the workplace.  This

argument is unpersuasive.  First, Plaintiffs present evidence that connects the gender-based

misconduct that Plaintiffs complain of and workplace safety -- evidence of sexual violence, as

well as evidence that violent conduct went hand-in-hand with sexual harassment.  Second,

Plaintiffs state in sworn affidavits that the violent conduct Defendant identifies as non-gender-

based was particularly directed toward women.  A reasonable jury could find that the

complained-of conduct was gender based, thus precluding summary judgment for Defendant on

this issue.

Plaintiff Thompson also testified that her clinical supervisor once grabbed her head and

pushed it onto his lap in a repeated motion indicative of oral sex.  Defendant denies this

allegation.  A genuine dispute of material fact exists as to this claim, thus precluding summary

judgment.

### ii.  Imputation of Harassing Conduct to Defendant

The NYCHRL provides explicit standards for imputing harassing acts of employees or

agents to an employer for purposes of a hostile work environment claim.  Those standards

require that

> [t]he employer knew of the employee's or agent's discriminatory conduct, and
> acquiesced in such conduct or failed to take immediate and appropriate corrective
> action; an employer shall be deemed to have knowledge of an employee's or
> agent's discriminatory conduct where the conduct was known by another
> employee or agent who exercised managerial or supervisory responsibility; or
> [t]he employer should have known of the employee's or agent's discriminatory
> conduct and failed to exercise reasonable diligence to prevent such discriminatory
> conduct.

N.Y.C. Admin. Code § 8-107(13)(b); *see also Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 480,

(2010).

The NYCHRL does not explicitly define a standard for imputing sexually harassing acts

of third parties, such as the inmates in this case, to an employer for purposes of a hostile work

environment claim.  However, in the analogous context of customer harassment under the

NYCHRL, one court persuasively noted that such standards should be at least consistent with

related state and federal statutes, in light of the NYCHRL's broad remedial sweep:

> with respect to customer harassment, it is well established in this circuit that

6

courts "impute employer liability for harassment by non-employees according to the same standards [under the NYCHRL] for non-supervisory co-workers, with the qualification that [they] will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees."

*Swiderski v. Urban Outfitters, Inc.*, No. 14 Civ. 6307, 2017 WL 6502221, at *7 (S.D.N.Y. Dec. 18, 2017) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013), and applying the NYSHRL standard set forth in *Summa* to the plaintiff's NYCHRL claim). Although work with mentally ill inmates can be expected to involve some degree of unwelcome conduct, employers are still required to take remedial action within their control to address known inmate misconduct, particularly the sort of egregiously dangerous and harassing misconduct at issue in this case. *See Beckford v. Dep't of Corr.*, 605 F.3d 951, 953 (11th Cir. 2010) (affirming that jury could find department of corrections liable under Title VII for failing to (1) implement policies addressing exhibitionist masturbation by inmates in front of female nurses or (2) mitigate the issue by permitting medical care to be provided to inmates in separate areas); *Freitag v. Ayers*, 468 F.3d 528, 533 (9th Cir. 2006) (affirming jury verdict holding prison liable under Title VII for failing to take remedial and preventative action in response to complaints of frequent exhibitionist masturbation, spraying with semen, and death threats).

The parties do not dispute that Defendant was informed of instances of misconduct but disagree as to whether Defendant exercised enough control over conditions at Rikers Island to address the complained-of misconduct. This disagreement precludes summary judgment for Defendant. Plaintiffs identify instances in which they claim Defendant could have taken action to increase employee safety and reduce harassment, either by implementing policies directly or by pressuring the New York City Department of Corrections ("DOC"), which exercised day-to-day control over the Rikers Island facility. Specifically, Plaintiffs note evidence supporting their

claims: (1) that Defendant did not take action to address complaints of sexual harassment by Dechoudens, but instead only expressed regret for her experiences; (2) that Defendant's supervisors prohibited Unneland from implementing various suggestions, including conducting clinical sessions with harassing patients through plexiglass, ensuring adequate documentation for harassing patients, ensuring proximity of correctional officers during working hours, and maintaining aggressive patients separate from other inmates when required; (3) that Defendant rejected Thompson's proposed request to DOC for additional escorts for staff; and (4) inaction by Defendant in response to Plaintiff Medich's requests for policies to address repeated sexual harassment by inmates.  A reasonable jury could conclude that Defendant could have (1) acted differently on Medich's and Dechoudens' complaints, either directly or through consultation with DOC and (2) worked to implement the measures proposed by Unneland and Thompson, again either directly or through consultation with DOC.  A reasonable jury could also conclude that such action would have addressed Plaintiffs' complained-of harm.  Defendant is denied summary judgment based on its asserted lack of control over inmate conduct.

In response, Defendant: (1) notes that safety at Rikers Island is primarily the responsibility of the DOC; (2) notes that Defendant's contract with DOHMH contains no obligation for Defendant to control inmates or the facility; (3) cites the DOC's inmate rulebook, which prohibits sexual harassment of workers; (4) cites its own policies, memoranda and correspondence stating that security is the DOC's responsibility; and (5) notes instances in which Plaintiffs complained that DOC (rather than Defendant) had failed to provide adequate security. That security is primarily the DOC's responsibility, or that Plaintiffs also had issues with the DOC's handling of inmates, does not address Plaintiffs' above-identified remedial measures, or resolve the factual question of whether Defendant could have effected their implementation,

either on its own or through consultation with the DOC.  *See Dunn v. Wash. Cty. Hosp.*, 429 F.3d

689, 691 (7th Cir. 2005) (in declining to permit summary judgment to a hospital where a non-

employee doctor harassed plaintiff, noting "ability to control the actor plays no role, . . . it is the

use (or failure to use) [the options available to the employer] that makes an employer

responsible").

Defendant also argues that it took every reasonable step it could to address inmate

misconduct, noting its: (1) internal policies and training programs addressing discrimination,

sexual harassment and violence; (2) efforts to address issues with DOC and pressure it to

implement remedial measures; (3) incident alert and reporting systems; and (4) establishment of

safety committees to address problems arising at Rikers Island.  Again, that Defendant provides

evidence of some remedial measures does not address the above factual disputes regarding the

availability and effectiveness of measures allegedly not taken.

Defendant also notes several cases where courts declined to entertain hostile work

environment claims based on the harassing behavior of medical patients and inmates.  These

cases are not persuasive, as they either (1) did not involve the degree of gender-based threats,

violence and harm alleged here or (2) did not involve an identification of measures within the

defendant's control that could have potentially mitigated the misconduct.

### B.  NYCHRL Retaliation Claims

Plaintiff Thompson alleges she was retaliated against because, after complaining of, *inter

alia*, sexual harassment and violence by inmates, Defendant demanded she (1) "account for each

second of [her] days"; (2) required her to email her supervisor each time she took a break or left

the unit; and (3) was micromanaged and denied the opportunity to switch assignments with other

workers.  Plaintiff Medich alleges she was retaliated against because, after complaining of sexual

harassment and violence by inmates, Defendant (1) dissolved a support group she formed with

her supervisor; (2) assigned her to dangerous patients and clinics; (3) denied her a transfer; and

(4) criticized her workplace performance.  Defendant does not dispute that it took these actions,

but maintains that it did so for legitimate, nondiscriminatory reasons.

### 1. Burden-Shifting Framework

New York courts considering NYCHRL retaliation claims on summary judgment have

adopted a modified version of the burden-shifting analysis set forth in *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973).  *See Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 117

(1st Dep't 2011); *accord Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 680 (2d

Dep't 2019).  Under the *Bennett* framework, a plaintiff must first make a prima facie showing of

membership in a protected class and an adverse employment action under circumstances giving

rise to an inference of discrimination.  *Bennett*, 936 N.Y.S. 2d at 118.  New York courts have

cautioned that plaintiff's burden to show a prima facie case is minimal on summary judgment,

given that "defendant has moved for summary judgment and has offered evidence . . . of one or

more non-discriminatory motivations for its actions."  *Id.* at 120.

Following that minimal showing, the burden shifts to the defendant to produce evidence

of non-discriminatory reasons motivating its actions, and summary judgment is proper only if the

defendant shows there is "*no* evidentiary route that could allow a jury to believe that

discrimination played a role in the challenged action."  *Bennett*, 936 N.Y.S. 2d at 118 (emphasis

added).  If the defendant does so, the plaintiff must show those reasons to be false or pretextual.

*Id.*  In making that showing, an NYCHRL plaintiff may rely on "mixed motive" evidence

showing the defendant had both discriminatory and non-discriminatory reasons for the

challenged action.  *Id.* at 120-21.  "It is important that the assessment of a retaliation claim be

made with a keen sense of the realities of the circumstances surrounding the plaintiff, of the fact

that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is

generally best suited to evaluate the impact of retaliatory conduct in light of those realities."

*Fletcher v. Dakota, Inc.*, 948 N.Y.S.2d 263, 269 (1st Dep't 2012) (internal quotations and

alterations omitted).[3]

### 2. Prima Facie Case

To make out a prima facie case of discrimination under the NYCHRL, "a plaintiff must

show that (1) he or she engaged in a protected activity as that term is defined under the

NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his

or her employer engaged in conduct which was reasonably likely to deter a person from

engaging in that protected activity, and (4) there is a causal connection between the protected

activity and the alleged retaliatory conduct." *Sanderson-Burgess* 102 N.Y.S.3d at 681.  A

reasonable jury could find these elements met, in light of the ease of making out a prima facie

case in NYCHRL cases.  *See Bennett*, 936 N.Y.S.2d at 118.

First, Plaintiffs engaged in protected activity of which Defendant was aware.  Protected

activity under the NYCHRL includes any opposition to a discriminatory practice forbidden under

the statute.  N.Y.C. Admin. Code § 8–107(7); *accord Mihalik*, 715 F.3d at 112.  This

---

[3] Where, as here, a summary judgment plaintiff alleges retaliatory gender-based conduct that
falls short of firing, New York courts and the Second Circuit sometimes move directly to the
second step of the *Bennett* analysis, asking whether, considering the evidence in the light most
favorable to the plaintiff, there is no possibility that discrimination played a role in the
complained-of action.  *See Suri v. Grey Global Grp., Inc.*, 83 N.Y.S.3d 9, 16, 18–19 (1st Dep't
2018), *appeal dismissed*, 116 N.E.3d 658 (N.Y. 2019) (collecting cases); *Mihalik v. Credit
Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 113 n.8 (2d Cir. 2013) (noting that the
NYCHRL provides a simplified inquiry that entitles a defendant to summary judgment "only if
the record establishes as a matter of law that discrimination played no role in its actions"
(internal quotation marks and alterations omitted)).

requirement is satisfied when a party communicates to the employer defendant, in substance, that she believes the defendant's treatment of her is discriminatory. *See Albunio v. City of New York*, 947 N.E.2d 135, 16 N.Y.3d 472, 479 (2011). Retaliation Plaintiffs directly raised issues of gender-specific harassment by inmates with Defendant to obtain remedial action. A reasonable jury could conclude that Defendant was aware that Retaliation Plaintiffs were engaged in protected activity under the NYCHRL.

Defendant claims that it could not reasonably have understood Retaliation Plaintiffs' complaints to involve gender-based discrimination, rather than general workplace safety concerns, and thus that it had no awareness of any protected activity by Retaliation Plaintiffs. This argument is unpersuasive given the sexual-harassment-specific nature of the complaints and the above reasoning regarding the overlap between sexual harassment and safety concerns. Defendant also argues that because many of these complaints were made in daily reports pursuant to Retaliation Plaintiffs' official duties, it had no indication that they were raising any specific claims of sexual harassment. This argument is unpersuasive because, unlike the cases Defendants cite, Retaliation Plaintiffs made substantive complaints of sexual harassment rather than complaints about "general unsatisfactory or unfair conduct," which were insufficient to put the defendant on notice of a gender discrimination claim. *See Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015) (summary order).

Second, a jury could conclude that the complained-of conduct was "reasonably likely to deter a person from engaging in [further] protected activity." *Sanderson-Burgess* 102 N.Y.S.3d at 681; *see also Fletcher*, 948 N.Y.S.2d at 269 (deterrence does not require a plaintiff to demonstrate "an ultimate action . . . or [] a materially adverse change," but must simply create a reasonable likelihood that a person would refrain from protected activity (quoting N.Y.C.

Admin. Code § 8–107(7))).  A reasonable jury could conclude that Defendant's treatment of

Retaliation Plaintiffs had adverse effects on their ability to perform their jobs, including: (1)

assignment to dangerous conditions, *see Hernandez v. City of New York*, No. 18 Civ. 5870, 2019

WL 2410129, at *1 (S.D.N.Y. June 7, 2019); (2) misplaced supervision and critique, *see Mihalik*,

715 F.3d at 116; and (3) inability to transfer positions or shifts, *see Cardwell v. Davis Polk &*

*Wardwell LLP*, No. 19 Civ. 10256, 2020 WL 6274826, at *38 (S.D.N.Y. Oct. 24, 2020).  Those

burdens, in turn, could reasonably be determined to discourage future complaints of gender-

based discrimination by Retaliation Plaintiffs.  Summary judgment on the NYCHRL retaliation

claims is denied based on this fact issue.

Third, a reasonable jury could find a causal relationship between Retaliation Plaintiffs'

complaints and Defendant's allegedly retaliatory behavior.  Defendant's actions followed

complaints by Retaliation Plaintiffs.  In Medich's case, the complained-of actions closely

followed her complaints.  Temporal proximity between an employee's complaint and the

retaliatory action indicates causation.  *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir.

2010); *accord Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 801 (S.D.N.Y. 2020) ("temporal

proximity of events may give rise to an inference of retaliation for the purposes of establishing a

prima facie case of retaliation").  Construing the evidence in the light most favorable to

Retaliation Plaintiffs and drawing all reasonable inferences in their favor, a reasonable jury could

weigh the evidence to conclude that Defendants acted with a retaliatory motive.  A genuine

dispute of material fact exists on this issue and precludes summary judgment on the NYCHRL

retaliation claims.

### 3.  Legitimate, Non-Discriminatory Reasons for Defendant's Actions

Under step 2 of the *Bennett* framework, summary judgment is warranted for Defendant

only if there is "*no* evidentiary route that could allow a jury to believe that discrimination played

a role in the challenged action." *Bennett*, 936 N.Y.S. 2d at 118 (emphasis added); *see also Suri*,

83 N.Y.S.3d at 18–19; *Mihalik*, 715 F.3d at 113 n.8.  Defendant offers evidence explaining

some, but not all, of the retaliatory activity identified by Retaliation Plaintiffs: (1) its increased

supervision of Thompson was due to repeated lateness and so that Defendant could better

understand her workload; (2) Medich's support group was disbanded because it was not

authorized by Defendant's contract with DOHMH; and (3) Medich's request to transfer was not

considered because she did not follow company procedures, despite instructions to do so.

Although those explanations run counter to Retaliation Plaintiffs' explanation for the

complained-of activity, a jury evaluating the evidence as to Defendant's reasons for its conduct

could still reasonably conclude that a discriminatory motive underlay Defendant's actions.  This

issue of material fact precludes summary judgment for Defendant on the NYCHRL retaliation

claims.[4]

## C.  NYLL Claims

The New York Labor Law permits recovery against an employer for unpaid wages and

overtime.  *See, e.g.*, *Maria v. Rouge Tomate Chelsea LLC*, No. 18 Civ. 9826, 2020 WL 6049893,

at *3 (S.D.N.Y. Oct. 14, 2020).  Defendant mandates a thirty-minute lunch break and deducts 0.5

hours automatically from employees' time records as uncompensated lunch time.  Plaintiffs

Thompson and Unneland claim that while they were employed by Defendant, they worked

through their lunch breaks but were not paid for their additional 2.5 hours of work per week.

---

[4] Under step 3 of the *Bennett* framework, Retaliation Plaintiffs may survive summary judgment
by identifying evidence showing that Defendant's non-discriminatory justifications for the
complained-of actions are pretextual.  Because summary judgment for Defendant is improper
due to the factual disputes at step 2 of the *Bennett* analysis discussed above, and because
Retaliation Plaintiffs do not identify evidence of pretext, analysis of this issue is not required.

Unneland claims she worked an additional four hours per week, for which she was not paid

overtime.  To prevail on their wage-and-hours claims, Plaintiffs must show that Defendant had

"actual or constructive knowledge that [they were] performing uncompensated work."  *Kuebal v.*

*Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011) (analyzing NYLL claim under the same

standards as a Fair Labor Standards Act claim).  Thompson and Unneland do not dispute their

testimony showing that they did not formally report their unpaid work to Defendant or their

union, but note their testimony that they told supervisors they were working through lunch, and

that their supervisors saw them working off the clock.  Construing the evidence in the light most

favorable to Plaintiffs as the non-movants, a reasonable jury could conclude that Defendant was

aware of this unpaid work.  Summary judgment on this claim is not proper.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is denied.

Defendant's request for oral argument is denied as moot.  The Clerk of Court is respectfully

directed to close docket numbers 107 and 134.

Dated:  January 12, 2021
    New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

15